ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP - 2 2004
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY SIMMONS, On Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO: 3:04-CV-0810-B |
| ABLE SECURITY AND INVESTIGATIONS INC., formerly known as MONARCH COURTESY PATROL, WALTER D. ROBERTS, personally, JOHN C. ROBERTS, personally, and HENRY CLEMONS, personally, | § § § § § § § § | |
| Defendants. | § | |

## PLAINTIFF'S REQUEST FOR ENTRY OF DEFAULT & DEFAULT JUDGMENT

Plaintiff asks the clerk of the court to enter a default and a default judgment against Defendant, as authorized by Federal Rule of Civil Procedure 55.

A. Introduction

1. Plaintiff is Gary Simmons, on behalf of himself and all other similarly situated. Opt-in Plaintiff is Terence Smith.

2. Defendants are Able Security and Investigations, formerly known as Monarch Courtesy Patrol (hereinafter "Able Security"), Walter D. Roberts, personally and Henry Clemons, personally, and John C. Roberts, personally.

3. On June 17, 2004, Defendant Able Security was served with a summons and a copy of Plaintiff's Complaint after Plaintiff was authorized by this Court to serve Defendant Able Security by leaving a true copy of the citation and attached complaint with someone more than sixteen years of age at 2818 Fort Worth Avenue, Dallas, Texas 75211.

4. On June 17, 2004, Defendant Walter D. Roberts was served with a summons and a copy of Plaintiff's Complaint after Plaintiff was authorized by this Court to serve Walter D. Roberts by leaving a true copy of the citation and attached complaint with someone more than sixteen years of age at 2818 Fort Worth Avenue, Dallas, Texas 75211.

5. On June 17, 2004, Defendant Henry Clemons was served with a summons and a copy of Plaintiff's Complaint after Plaintiff was authorized by this Court to serve Henry Clemons by leaving a true copy of the citation and attached complaint with someone more than sixteen years of age at 2818 Fort Worth Avenue, Dallas, Texas 75211.

6. Gary Simmons and Terence Smith are entitled to entry of default and to default judgment.

B. <u>Argument</u>

7. The clerk of the court may enter a default and a default judgment against a party who has not filed a responsive pleading or otherwise defended the suit, as long as the affirmative relief sought is a calculable sum. FED. R. CIV. P. 55(a), (b)(1).

8. The clerk should enter a default and a default judgment against Defendants because Defendants Able Security, Henry Clemons and Walter D. Roberts did not file an answer within 20 days after June 17, 2004, the date of service. FED. R. CIV. P. 12(a)(3).

9. Defendant Walter D. Roberts called Plaintiff's lawyers to discuss the merits of the case and arranged a time to talk before his answer was due. Mr. Roberts never called back, did not return Plaintiff's lawyers' calls, and did not file an answer within 20 days after the date of service.

10. Plaintiff meets the procedural requirement for obtaining both an entry of default and a default judgment from the clerk as demonstrated by Jessica Dean's sworn affidavit, attached as Exhibit B.

11. Neither Defendant Clemons nor Defendant Roberts is an infant, an incompetent person, or a member of the United States military. See, Exhibit A.

12. Because Defendants did not file a responsive pleading or otherwise defend the suit, they are not entitled to notice of entry of default. FED. R. CIV. P. 55(a), (b)(1); see *Key Bank v. Tablecloth Textile Corp.*, 74 F.3d 349, 352-53 (1st Cir. 1996).

13. The damages set forth in Plaintiff's Complaint are liquidated and proved by affidavit, attached as Exhibits B, C and D.

14. Based on Exhibit C, Gary Simmons is owed $30,370.82.

15. Based on Exhibit D, Terence Smith is owed $89,345.79.

16. Based on Exhibit B, costs incurred by Plaintiff in this case are $450.

C. Conclusion

17. Since the Defendants have failed to file a responsive pleading and for the foregoing reasons, Plaintiff asks the Court to enter a default and a default judgment in favor of Plaintiff for the sum of $120,166.61 plus costs of court.

Respectfully submitted,

RASANSKY LAW FIRM

By: /s/ Jeremi
/Jeremi K. Young
State Bar No. 24013793
**Jeffrey H. Rasansky**
State Bar No. 16551150
**Jessica M. Dean**
State Bar No. 24040777

2525 McKinnon, Suite 725
Dallas, Texas 75201
214/651-6100
214/651-6150 Fax

ATTORNEYS FOR PLAINTIFF

# EXHIBIT A

## MILITARY AFFIDAVIT

STATE OF TEXAS §
DALLAS COUNTY §

On this day, Jessica Dean appeared before me, the undersigned notary public. After I administered an oath to her, on her oath, she said:

1. "My name is Jessica Michelle Dean. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. Defendant, Walter D. Roberts, social security number 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, is not in the military. Defendant, Henry Clemons, social security number 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, is not in the military. I know this based on the attached military status reports for Walter D. Roberts and Henry Clemons. Walter D. Roberts' military status report is attached as Exhibit 1. Henry Clemons' military status report is attached as Exhibit 2."

_____
Jessica M. Dean

SWORN TO and SUBSCRIBED before me on this the ___, day of August, 2004.

_____
Notary Public in and for the
State of Texas

ANITA GALLAWAY
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
MARCH 22, 2006

# EXHIBIT 1

Department of Defense Manpower Data Center                AUG-26-2004 09:04:46



Military Status Report
Pursuant to the Servicemen's Civil Relief Act of 2003

| Last Name | First | Middle | Begin Date | Active Duty Status | Service/Agency |
|---|---|---|---|---|---|
| ROBERTS | WALTER | D. | | | |
| Currently not on Active Military Duty, based on the Social Security Number and last name provided. ||||||

Upon searching the information data banks of the Department of Defense Manpower Data Center, the above is the current status of the Defendant(s), per the Information provided, as to all branches of the Military.

*[signature: Robert J Brandewie]*

Robert J. Brandewie, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) Is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

**If you have information that makes you feel that the DMDC response is not correct, please fax your response to 703-696-4156 or call 703-696-6762 and further research will be done. For personal privacy reasons, SSNs are not available on this printed results page. Requesters submitting a SSN only receive verification that the SSN they submitted is a match or non-match.**

8/26/2004

# EXHIBIT 2



Department of Defense Manpower Data Center   AUG-26-2004 09:02:41

Military Status Report
Pursuant to the Servicemen's Civil Relief Act of 2003

| Last Name | First | Middle | Begin Date | Active Duty Status | Service/Agency |
|---|---|---|---|---|---|
| CLEMONS | HENRY | E. | | | |
| Currently not on Active Military Duty, based on the Social Security Number and last name provided. ||||||

Upon searching the information data banks of the Department of Defense Manpower Data Center, the above is the current status of the Defendant(s), per the information provided, as to all branches of the Military.

*Robert J Brandewie* (signature)

Robert J. Brandewie, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

**If you have information that makes you feel that the DMDC response is not correct, please fax your response to 703-696-4156 or call 703-696-6762 and further research will be done. For personal privacy reasons, SSNs are not available on this printed results page. Requesters submitting a SSN only receive verification that the SSN they submitted is a match or non-match.**

8/26/2004

# EXHIBIT B

STATE OF TEXAS §
DALLAS COUNTY §

## AFFIDAVIT OF JESSICA DEAN

On this day, Jessica Dean appeared before me, the undersigned notary public. After I administered an oath to her, on her oath, she said:

1. "My name is Jessica Michelle Dean. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. The Rasansky Law Firm represents Gary Simmons and Terrance Smith in a lawsuit against Able Security and Investigations Inc., formerly known as Monarch Courtesy Patrol [hereinafter Able Security] Henry Clemons and Walter D. Roberts for Fair Labor Standard Act violations.

3. On June 17, 2004, Defendant Able Security was served with a summons and a copy of Plaintiff's Complaint through substitute service ordered by Judge Barefoot Sanders, in his June 14, 2004 Order, which allowed for service by leaving a true copy of the citation and petition with anyone more than sixteen years of age at 2818 Fort Worth Avenue, Dallas, Texas, 75211.

4. On June 17, 2004, Defendant Walter D. Roberts was served with a summons and a copy of Plaintiff's Complaint.

5. On June 17, 2004, Defendant Henry Clemons was served with a summons and a copy of plaintiff's Complaint.

6. Defendant Able Security did not file an answer within 20 days after June 17, 2004, the date of service.

7. Walter D. Roberts did not file an answer within 20 days after June 17, 2004, the date of service.

8. Defendant Henry Clemons did not file an answer within 20 days after June 17, 2004, the date of service.

9. Defendant Walter D. Roberts called me to discuss the case during the week of June 21, 2004 and we arranged a time to talk before his answer was due. I called his office numerous times after that call and still have received no response. Mr. Roberts never called back and did not file an answer within 20 days after the date of service.

10. The affirmative relief sought is a calculable sum. The damages set forth in plaintiff's complaint are liquidated.

11. Cost incurred by Plaintiff in this case amount to $450.00.

*Jessica M. Dean*
Jessica M. Dean

SWORN TO and SUBSCRIBED before me ___*Jessica Dean*___ on August, 27th 2004.

[Notary Seal: ANITA GALLAWAY, NOTARY PUBLIC STATE OF TEXAS, COMMISSION EXPIRES: MARCH 22, 2008]

*Anita Gallaway*
Notary Public in and for the State of Texas

# EXHIBIT C

Case 3:04-cv-00810-B Document 13 Filed 09/02/04 Page 13 of 20 PageID 62

STATE OF TEXAS §
DALLAS COUNTY §

## AFFIDAVIT OF GARY SIMMONS

On this day, Gary Simmons appeared before me, the undersigned notary public. After I administered an oath to him, on his oath, he said:

1. "My name is Gary Simmons. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I worked for Able Security and Investigations Inc., formerly known as Monarch Courtesy Patrol [hereinafter Able Security] from June 10, 2002 until August 31, 2003, which is 63.86 weeks.

3. Walter D. Roberts had many managerial responsibilities when I worked for Able Security. In addition, he maintained substantial control of the terms and conditions of my work when I worked at Able Security. He had control over significant aspects of Able Security's operations. I spoke with Walter D. Roberts on numerous occasions about unpaid overtime and he cursed me out and told to me leave his office. I know from personal knowledge that other security guards asked him about unpaid overtime and received a similar response. Walter D. Roberts had power over compensation and hours worked but refused to pay security guards their hours worked.

4. Henry Clemons exerted control over significant aspect of Able Security's operations while I worked at Able Security. He had managerial responsibilities and substantial control of the terms and conditions of my work.

5. I made $9.25 an hour when I worked at Able Security.

6. I was never paid time and one-half for overtime hours worked. If overtime hours were scheduled I was paid my regular rate of pay instead of time and one-half my regular rate of pay. If I was required or permitted to work overtime that was not scheduled I was not paid for the time worked.

7. I was scheduled to work five days a week, 12 hours a day, or 60 hours each week. It was assumed that I took a half hour lunch six days a week; therefore, three hours was deducted from my scheduled hours so that I was paid for 57 hours of work per week. I was paid my regular rate of pay for the 57 hours that I was scheduled to work each week. In other words, I was not paid at the overtime rate of pay for the 17 hours of scheduled overtime I worked each week. Instead, I was paid at the regular rate of pay.

8. If you multiply the factors below the total is $10,041.99:

- 17 hours (overtime hours in an average week worked that was paid at the regular rate of pay instead of at the time and one half-rate of pay);
- .5 (for the half-time I was not paid);
- $9.25 (my salary);
- 63.86 (the # of weeks I worked at Able Security);
- 2 (liquidated damages);

    17 x .5 x $9.25 x 63.86 x 2 = $10,041.99.

9. In addition to my scheduled hours, I was permitted or required to work additional hours. I was not paid for this time.

   a. I was not given breaks that were 30 minutes or longer where I was completely relieved of my duties. Nonetheless, three hours were deducted from my pay check each week. A lunch was deducted for six days each week although I only worked five days a week because most employees worked six days a week. I was told by Walter D. Roberts that the system was set up to deduct three hours for six, thirty-minute lunches, from each security guard's pay check and that the system would not be changed to accommodate my schedule. As a result, a lunch break was deducted from my pay six times a week each week although I regularly worked a five day work week.

   b. I was required or permitted to come in before my scheduled shift. I was told to arrive early to keep people from coming into Big T Plaza (where I was assigned to work). On average, I arrived to work between 15-20 minutes early each day I worked. In other words, I averaged 1.46 hours of work each week [(20 + 15)/2 * 5 = 87.5/60 minutes = 1.46 hours] of unpaid overtime because my captain (either Captain Bennie Webster) requested I arrive early.

   c. I was expected to stay past my schedule shift. Either Captain Bennie Webster expected that the security guards close down a location by clearing the parking lot. This took at least 15 minutes and was expected every work day. It often took up to 30 minutes past my scheduled shift to clear the parking lot because the people shopping or working at Big T Plaza would linger before leaving. In other words, I averaged 1.88 hours of work each week [(15 + 30)/2 *5 = 112.5/60 minutes = 1.88 hours) of unpaid overtime because my captains required that I work past my scheduled shift.

   d. On an average week, I worked 6.34 hours of overtime each week [3 (no lunches) + 1.46 (coming in early) + 1.88 (staying late) = 6.34].

10. If you multiply the factors below the total is $11,235.21:

   - 6.34 hours (overtime hours worked that was not paid in one week);
   - 1.5 (the overtime rate of pay);
   - $9.25 (my salary);
   - 63.86 (the # of weeks I worked at Able Security);
   - 2 (liquidated damages);

   6.34 x 1.5 x $9.25 x 63.86 x 2 = $11,235.21.

11. In addition, to the work mentioned above, which was done on a weekly basis, I was required to do drug sweeps on occasion. Captain Gloria Robins required employees to do these drug sweeps. During my employment with Able Security I did five drug sweeps. Each drug sweep lasted approximately 3 hours.

12. If you multiply the factors below the total is $416.24:

   - 5 (# of drug sweeps);
   - 3 (average time required to complete each drug sweep);
   - $9.25 (my salary);
   - 1.5 (for the overtime rate of pay);
   - 2 (for liquidated damages);

   5 x 3 x $9.25 x 1.5 x 2 = $416.24.

13. In order to secure representation I agreed to pay as attorneys' fees 40% of the gross recovery.

14. [416.24 (drug sweeps) + $11,235.21 (unpaid overtime) + $10,041.99 (overtime paid at the wrong rate of pay)] * 1.4 (attorneys' fees) = $30,370.82."

*Gary Simmons* (signature)
Gary Simmons

SWORN TO and SUBSCRIBED before me _Gary Sim__ 27th_____ on August ___, 2004.

*Anita Gallaway* (signature)
Notary Public in and for the
State of Texas

[Notary seal: ANITA GALLAWAY, NOTARY PUBLIC STATE OF TEXAS, COMMISSION EXPIRES: MARCH 22, 2006]

# EXHIBIT D

Case 3:04-cv-00810-B Document 13 Filed 09/02/04 Page 17 of 20 PageID 66

STATE OF TEXAS §
DALLAS COUNTY §

## AFFIDAVIT OF TERENCE SMITH

On this day, Terence Smith appeared before me, the undersigned notary public. After I administered an oath to him, on his oath, he said:

1. "My name is Terence Smith. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I worked for Able Security and Investigations Inc., formerly known as Monarch Courtesy Patrol [hereinafter Able Security] from January 15, 2002 until March 15, 2004, which is 112.86 weeks.

3. Walter D. Roberts had numerous managerial responsibilities when I was employed at Able Security. He maintained substantial control of the terms and conditions of my work when I worked at Able Security and had control over significant aspects of Able Security's operations.

4. Henry Clemons exerted control over significant aspect of Able Security's operations. He had managerial responsibilities and substantial control of the terms and conditions of my work.

5. I made $9.15 an hour when I worked at Able Security.

6. I was never paid time and one-half for overtime hours worked. If overtime hours were scheduled I was paid my regular rate of pay instead of time and one-half my regular rate of pay. If I was required or permitted to work overtime that was not scheduled I was not paid for the time worked.

7. I was scheduled to work six days a week, 12 hours a day or 72 hours a week. Tuesdays were my day off. It was assumed that I took a half hour lunch six days a week; therefore, three hours was deducted from my scheduled hours so that I was paid for 69 hours of work per week. In other words, I was not paid at the overtime rate of pay for the 29 hours of scheduled overtime I worked each week (69 – 40 = 29). Instead, I was paid at my regular rate of pay.

8. If you multiply the factors below the total is $29,947.40:

    - 29 hours (overtime hours in an average week worked that was paid at the regular rate of pay instead of at the time and one half-rate of pay);
    - .5 (for the half-time I was not paid);

- $9.15 (my salary);
- 112.86 (the # of weeks I worked at Able Security);
- 2 (liquidated damages);

    29 x .5 x $9.15 x 112.86 x 2 = $29,947.40.

9. In addition to my scheduled hours, I was permitted or required to work additional hours. I was not paid for this time.

    a. I was not given breaks that were 30 minutes or longer where I was completely relieved of my duties. Nonetheless, three hours were deducted from my pay check each week.

    b. I was required or permitted to come in before my scheduled shift. My captain required me to come into work an hour early to unlock the doors and to make sure that no one came into the Plaza (I was assigned to guard Big T Plaza). Other guards regularly showed up after I was required to arrive, but still before our scheduled shift. The captains wanted more security guards to be present as more customers arrived in order to make sure no one tried to enter the Plaza before it opened. I was the first person to arrive and other showed up at least 10 minutes before their shift (often other guards arrived earlier depending on what the Captain asked of the individual guard). I averaged 6 hours of work each week of unpaid overtime because my captain (either Captain Bennie Webster) requested I arrive an hour before my shift, which was also an hour before the Plaza was opened.

    c. I was expected to stay past my schedule shift. Either Captain Bennie Webster expected that the security guards close down a location by clearing the parking lot. This took at least 15 minutes and was expected every work day. It often took up to 30 minutes past my scheduled shift to clear the parking lot because the people shopping or working at Big T Plaza would linger before leaving. In other words, I averaged 1.88 hours of work each week [(15 + 30)/2 *5 = 112.5/60 minutes = 1.88 hours) of unpaid overtime by my captains required that I work past my scheduled shift.

    d. On average, I worked 10.88 hours of overtime each week [3 (no lunches) + 6 (coming in early) + 1.88 (staying late) = 10.88.

10. If you multiply the following factors the total is $33,706.32:

    - 10.88 hours (overtime hours worked that was not paid in one week);
    - 1.5 (the overtime rate of pay);
    - $9.15 (my salary);

- 112.86 (the # of weeks I worked at Able Security);
- 2 (liquidated damages);

   10.88 x 1.5 x $9.15 X 112.86 x 2 = $33,706.32.

11. In addition, to the work mentioned above, which was done on a weekly basis, I was required to do drug sweeps on occasion. Captain Gloria Robins required employees to do these drug sweeps. During my employment with Able Security I did two drug sweeps. Each drug sweep lasted approximately three hours.

12. If you multiply the following factors the total is $164,70:

- 2 (# of drug sweeps);
- 3 (average time required to complete each drug sweep);
- $9.15 (my salary);
- 1.5 (for the overtime rate of pay);
- 2 (for liquidated damages);

   2 x 3 x $9.15 x 1.5 x 2 = $164.70.

13. In order to secure representation I agreed to pay as attorneys' fees 40% of the gross recovery.

14. [164.7 (drug sweeps) + $33,706.32 (unpaid overtime) + $29,947.40 (overtime paid at the wrong rate of pay)] * 1.4 (attorneys' fees) = $89,345.79."

*Terence Smith* (signature)
Terence Smith

SWORN TO and SUBSCRIBED before me _Terence Smith_ on August 27th, 2004.

[Notary seal: ANITA GALLAWAY, NOTARY PUBLIC STATE OF TEXAS, COMMISSION EXPIRES: MARCH 22, 2008]

*Anita Gallaway* (signature)
Notary Public in and for the
State of Texas